IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.           )<br>)<br>BARRON DWAYNE THOMAS, JR.,  )<br>)<br>　　Petitioner.           ) | Criminal Case No. 4:19CR80 (RCY)<br>Civil Action No. 4:21CV103 (RCY) |

### MEMORANDUM OPINION

Petitioner Baron Dwayne Thomas, Jr., a federal prisoner proceeding *pro se*, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Petition"), ECF No. 144. Thomas raises various claims of ineffective assistance of counsel. Pet. at. 3–6. Thomas also appears to claim that he is actually innocent of the offenses to which he pleaded guilty. *See id.* at 2. The Court finds that the materials before it adequately present the facts and legal contentions, and that a hearing would not aid the decisional process. For the reasons set forth below, Thomas's § 2255 Petition will be DENIED.

### I. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 12, 2019, a federal grand jury returned an Indictment charging Thomas with (i) one count of Conspiracy to Distribute and Possess with Intent to Distribute Heroin, Cocaine, Cocaine Base, and Oxycodone in violation of 21 U.S.C. §§ 846 and 841; (ii) one count of Distribution of Heroin, Cocaine Base, Cocaine, or Oxycodone in violation of 21 U.S.C. § 841(a)(1); (iii) one count of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1); and (iv) one count of Possession of a Firearm During Drug Trafficking in violation

of 18 U.S.C. § 924(c). Indictment at 1, ECF No. 2. Thomas requested court-appointed counsel and the Court appointed Chad Dorsk to represent Thomas.[1] *See* Appointment, ECF No. 21.

Shortly thereafter, Attorney Dorsk and the government jointly moved for a competency evaluation, which the Court granted. *See* Joint Mot. Competency, ECF No. 24; Order, ECF No. 25. Thomas was evaluated and found competent to stand trial. *See* Mot., ECF No. 45; Order, ECF No. 48. On July 9, 2020, Thomas appeared before United States Magistrate Judge Douglas E. Miller and pleaded guilty, pursuant to a written Plea Agreement and Statement of Facts, to Count 5 (Distribution of Heroin, Cocaine Base, Cocaine, or Oxycodone) and Count 7 (Possession of a Firearm During Drug Trafficking) of the Indictment. *See* Order at 1, ECF No. 69; Plea Agreement, ECF No. 67; Statement Facts, ECF No. 68.

Prior to sentencing, Attorney Dorsk moved to withdraw as Thomas's counsel. First Mot. Withdraw, ECF No. 82. The Court denied this Motion, and Attorney Dorsk filed a second withdrawal motion shortly thereafter. *See* Order, ECF No. 85; Second Mot. Withdraw, ECF No. 86. The Court granted the second withdrawal motion and appointed Attorney Shawn Cline to represent Thomas. *See* Order, ECF No. 95.

Attorney Cline filed a Position on Sentencing on behalf of Thomas and represented Thomas at sentencing. *See* Position Sent'g, ECF No. 110; Reply, ECF No. 113; Sent'g Tr., ECF No. 148. At sentencing, the Court granted Thomas's motion for a downward variance (albeit not to the extent that Thomas requested) and sentenced Thomas to 90 months imprisonment on Count 5, and 60-months imprisonment on Count 7, to be served consecutively. *See* Sent'g Tr. at 22–23 (granting Thomas a ten-month downward variance rather than the 50-month downward variance that Thomas requested); *see also* J. at 2, ECF No. 118.

---

[1] Thomas's criminal case was initially assigned to United States District Judge Rebecca Beach Smith. Judge Smith subsequently reassigned the case to the undersigned.

Thomas timely filed his § 2255 Petition and the Court ordered the government to file a response. Order at 2, ECF No. 147. The government moved to compel Attorneys Dorsk and Cline to file affidavits responding to the allegations in Thomas's Petition, and the Court granted that motion. *See* Mot. Compel at 1–2, ECF No. 151; Order at 1, ECF No. 152. Thereafter, the government filed its Response in Opposition to Thomas's Petition along with Attorney Dorsk's Affidavit and Attorney Cline's Declaration. Resp., ECF No. 153; Dorsk Aff., ECF No. 153-1; Cline Decl., ECF No. 153-2. Thomas did not file a reply.

## II. STANDARD OF REVIEW

A federal prisoner may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must prove by a preponderance of the evidence (1) that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," (2) that the district court "was without jurisdiction to impose such sentence," (3) that the sentence exceeds "the maximum authorized by law," or (4) that the sentence or conviction is "otherwise subject to collateral attack." *Id.*; *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

While a § 2255 motion enables a petitioner to collaterally attack his sentence or conviction by initiating a new proceeding, the existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." *United States v. Allgood*, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). On the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). The "higher hurdle" applies because, once a petitioner's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands

respect." *Id.* at 165–66. For this reason, the doctrine of procedural default prevents a district court from reaching the merits of most § 2255 claims that could have been raised on direct appeal.

However, a § 2255 petitioner need not overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. *See United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997). To obtain relief based on an allegation of ineffective assistance of counsel, a petitioner must establish two things: (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) that counsel's inadequate performance resulted in prejudice to the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Conclusory statements are insufficient to carry a petitioner's burden. *See United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000))).

Satisfying the first prong of *Strickland* requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Reviewing courts strongly presume that counsel exercised reasonable professional judgment, and only in "relatively rare situations" will a § 2255 motion establish that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Tice v. Johnson*, 647 F.3d 87, 102 (4th Cir. 2011) (quoting *Strickland*, 466 U.S. at 690).

The second prong of *Strickland* requires a petitioner to "affirmatively prove prejudice," which means he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. "A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Id.* at 694. The prejudice prong is slightly modified where, as here, a petitioner challenges a conviction entered after a guilty plea; in such circumstances, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### III. DISCUSSION

As noted above, Thomas sets forth various claims that his attorneys were constitutionally ineffective and also appears to claim that he is actually innocent of the crimes to which he pleaded guilty. With respect to his ineffective assistance claims, Thomas alleges that his counsel (1) failed to bring a Fourth Amendment challenge regarding certain evidence and failed to challenge the indictment; (2) failed to "allow [Thomas] an opportunity to review" his Presentence Report ("PSR"), and to challenge certain aspects of the PSR; (3) failed to challenge the drug weight attributable to Thomas; (4) failed to do adequate legal research and to adequately prepare; (5) failed to become familiar "with regard to specific scientific area[s] in which an expert is needed"; (6) failed "to read and interview [sic] documents disclosed which contained potentially exculpatory materials"; (7) failed to adequately investigate and conduct pretrial preparations; and (8) failed to prepare a defense and conduct witness interviews. Pet. at 3–5. Thomas also asserts that the cumulative effect of all of these errors violated his right to effective assistance of counsel. *Id.* at 5–6. Finally, Thomas claims that he "is actually, factually, innocent of the crimes he was convicted of." *Id.* at 2; *see also id.* at 7.

#### A. Ineffective Assistance of Counsel

##### 1. Failure to Raise a Fourth Amendment Challenge and to Challenge the Indictment

Thomas claims that counsel "failed to challenge illicit use of cell phone ping off of cell towers." Pet. at 3; *see also id.* at 8 (Thomas appearing to reiterate his claim that counsel was ineffective because there was "no suppression"). Thomas appears to further claim that, because

the cell phone data was obtained in violation of the Fourth Amendment, his indictment was defective, and that counsel was ineffective for failing to challenge the indictment. *See id.*

To establish an ineffective assistance claim based upon failure to file a suppression motion, courts employ a modified *Strickland* test. *See Grueninger v. Dir., Va. Dep't of Corrs.*, 813 F.3d 517, 525 (4th Cir. 2016). To establish *Strickland*'s prejudice prong under this modified test, Thomas must "show both (1) that the motion was meritorious and likely would have been granted, and (2) a reasonable probability that granting the motion would have affected the outcome of his trial." *Id.* (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). Here, Thomas offers no factual support or legal argument to support his bare claims.

The Court notes that Attorney Dorsk states that upon his review of all of the pertinent materials, he did not believe that "a legitimate challenge could be made to the search warrant, or the material obtained from it." Dorsk Aff. ¶ 4. Thomas supplies no basis upon which counsel could have filed a suppression motion or otherwise attacked the indictment. Thus, Thomas's conclusory allegations fail to state claims for relief. *See Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of habeas claim appropriate where petitioner "stated only bald legal conclusions with no supporting factual allegations"); *see also Dyess*, 730 F.3d at 359 ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (quoting *Thomas*, 221 F.3d at 437)). Accordingly, these claims will be DENIED.

**2. Failure to Review PSR**

Thomas claims that his attorneys did not "allow [him] an opportunity to review" the PSR. Pet. at 3. Attorneys Dorsk and Cline dispute this claim. *See* Dorsk Aff. ¶ 5; Cline Decl. ¶¶ 2–3. Furthermore, Thomas's claim is directly contradicted by his own sworn statements at the sentencing hearing. *See* Sent'g Tr. at 7. Specifically, when the Court asked Thomas if he had reviewed the PSR with his attorney prior to Court, Thomas replied, "Yes, sir." *Id.* The Court further

6

inquired whether Thomas, with his attorney's help, understood the contents of the PSR. *Id.* Thomas again replied, "Yes, sir." *Id.*

Absent "extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's [prior] sworn statements" are considered to be "patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). No circumstances exist here that would lead the Court to consider Thomas's prior sworn statements to be untruthful. Accordingly, Thomas's claim is without merit and will be DENIED.

### 3. Failure to Challenge Drug Weight

Thomas was attributed with a little more than 180 grams of crack, among other drugs. *See* PSR at 9. With respect to the drug weight for which Thomas was held responsible, Thomas first appears to claim that "he did not receive the benefit of the [Fair Sentencing Act of 2010 ("FSA")]," and that his counsel was ineffective for failing to raise this issue. *See* Pet. at 4; *see also* Fair Sentencing Act of 2010, PL 111-220, 124 Stat 2372 (codified as amended in scattered sections of Titles 21 and 28 U.S.C.).

The FSA "increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5–year minimum and from 50 grams to 280 grams in respect to the 10–year minimum." *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020) (internal quotation omitted). The FSA also "lowered the crack-to-powder cocaine disparity from 100–to–1 to 18–to–1," which reduced "the sentencing disparity between crack cocaine offenses and powder cocaine offenses." *Id.* The FSA also mandated the United States Sentencing Commission to incorporate the provisions of the Act into the federal sentencing guidelines within 90 days of its August 3, 2010 enactment. *See* Fair Sentencing Act of 2010, PL 111-220, § 8, 124 Stat 2372, 2374.

As the government correctly notes in its Response, Thomas's claim that he did not receive the benefit of the FSA is simply incorrect. *See* Resp. at 9. Thomas was sentenced on December 17, 2020, more than ten years after the enactment of the FSA. As Thomas's PSR clearly indicates, his sentencing guidelines were calculated using the 2018 Guidelines Manual, which incorporates all prior amendments, including those mandated by the FSA. *See* PSR at 9; *see also* U.S.S.G. § 1B1.11. Accordingly, this claim is without merit and will be DENIED.

Thomas also appears to claim that counsel was ineffective for failing to challenge the quantity of drugs for which Thomas was responsible and for failing to seek an independent laboratory analysis. Pet. at 4. Thomas offers no evidence to support his vague and conclusory allegations.

In response to Thomas's allegation regarding failure to challenge the drug weight, Attorney Cline states:

> [C]ounsel discussed at length the manner in which a Defendant can challenge the drug weight at sentencing and the various presumptions and burdens that apply in that process. Counsel explained to [Thomas] that to dispute the drug weight he would need to testify at sentencing and that the various witnesses and undercover sources listed in the PSR would be more than happy to testify at his sentencing hearing that the drug weights and events described in the PSR were accurate. Counsel explained to [Thomas] that if the court found the testimony of the multiple witnesses the United States would present was more credible than his own (which the court almost certainly would), he would likely lose the three points for acceptance of responsibility, which would have raised his offense level to 30 and his guideline sentencing range to 135 to 168 months plus 60 months consecutive. It was counsel's advice that this was a risk not worth taking and [Thomas] agreed. Accordingly, when the court inquired at sentencing about the PSR [Thomas] agreed that he had no corrections or additions to the document.

Cline Decl. ¶ 3. Attorney Cline's advice to Thomas and the strategic decision not to challenge the drug weight—which avoided the risk that Thomas would lose acceptance of responsibility—are entitled to enormous deference. *See United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004); *see also Lowe v. United States*, No. 4:10cr132, 2013

WL 6091866, at *10 (E.D. Va. Nov. 18, 2013) (rejecting a similar claim where petitioner failed to offer any evidence that would "call[] into question the defense's strategic choice at sentencing to opt not to further challenge the drug weight calculation in an effort to ensure that [p]etitioner retained the 3–level credit for acceptance of responsibility"). Attorney Cline's strategic decision to not place Thomas's acceptance of responsibility in jeopardy appears to be the wisest course of action, and Thomas offers no evidence or argument to the contrary. *See* Pet. at 4.

On these facts, the Court finds that Attorney Cline's conduct does not fall below *Strickland*'s objective standard of reasonableness. Furthermore, Thomas has not shown prejudice because he has failed to establish any reasonable probability that his sentence would have been lower if his attorney had challenged the drug weight. *See United States v. Rangel*, 781 F.3d 736, 746 (4th Cir. 2015). Accordingly, this claim will be DENIED.

With regard to Thomas's claims that counsel should have sought an independent laboratory analysis, the Court notes that only a small fraction of the total drug weight attributed to Thomas was based upon drugs that were seized by law enforcement and submitted for testing. *See* PSR ¶¶ 12–27. The vast majority of the drug weight attributed to Thomas was based upon statements from co-defendants, unindicted co-conspirators, and confidential sources (i.e., historical drug weight). *See id.* Only a little more than five kilograms of the more than 870 kilograms of converted drug weight attributed to Thomas was based on seized drugs. *See id.* ¶¶ 13, 25.

Thomas had a Base Offense Level of 28 based upon the 870 kilograms of converted drug weight. *Id.* ¶ 33. Even if the five kilograms were excluded altogether from Thomas's weight, he still would have been well over the 700-kilogram threshold for a Base Offense Level of 28. *See id.* On these facts, the Court cannot find that the purported failure to seek

an independent laboratory analysis was constitutionally deficient. Moreover, even if the Court were to assume that counsel were deficient in not seeking an independent laboratory analysis, Thomas has not established prejudice. For these reasons, this claim will be DENIED.

### 4. Failure to Prepare, Research, Identify Experts, Identify Exculpatory Evidence, Investigate, and Identify Witnesses

Thomas next broadly claims that his counsel failed to "do basic legal research," "review the testimony of key witnesses," review documents, identify experts, identify exculpatory evidence, prepare for trial, and interview defense witnesses. Pet. at 4–5.

Attorney Dorsk states that he "reviewed all case materials provided by the [government] to include interviews of co-defendants, and other unindicted government witnesses." Dorsk Aff. ¶ 7A. Attorney Dorsk further states that he interviewed Thomas's girlfriend who was a government witness and who provided "damning information to investigators, which weighed heavily on [Thomas] and greatly influenced his decision to plead guilty." *Id.* Attorney Dorsk also states that he "reviewed wiretaps of [Thomas], viewed video footage purporting to show a controlled buy of narcotics from [Thomas], and social media posts among other things." *Id.* ¶ 7B. Attorney Dorsk also notes that "there were search warrants which supported the seizure of incriminating evidence from [Thomas's] home" and a "pole camera which captured drug activity at [Thomas's] residence." *Id.* ¶ 10.

According to Attorney Dorsk, he met with "or otherwise counseled [Thomas] concerning his case on at least (19) nineteen separate occasions." *Id.* ¶ 7C. Finally, Attorney Dorsk asserts that his investigation and review of the evidence in this case revealed no exculpatory evidence nor revealed any issue that would warrant the need to engage a scientific expert. *See id.* ¶¶ 8–9.

Here, Thomas fails to provide any factual support whatsoever for his claims. *See* Pet. at 7. He does not identify a single piece of evidence or a single witness, much less explain how such evidence or witness would have resulted in a different outcome. *See id.* Thomas's vague and conclusory allegations fall far short of establishing either prong of the *Strickland* analysis. Even affording Thomas the broadest possible construction, his claims are nothing more than pure speculation. Accordingly, these claims are DENIED.

**5. Cumulative Effect**

Thomas next claims that the cumulative effect of counsels' errors prejudiced his "opportunity at a fair trial, fair court proceeding, [and] fair result in his proceedings." Pet. at 5. As the Fourth Circuit Court of Appeals has explained, ineffective assistance of counsel claims must be reviewed individually; "an attorney's actions or omissions 'that are not unconstitutional individually cannot be added together to create a constitutional violation.'" *Fisher v. Angelone*, 163 F.3d 835, 852–53 (4th Cir. 1998) (quoting *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996)).

Thus, for the Court to consider Thomas's cumulative-effect claim, he must have established multiple constitutional errors by counsel. *See id.* at 852 n.9 (explaining that "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient"); *see also United States v. Russell*, 34 F. App'x 927 (4th Cir. 2002) (stating that "it is not appropriate to consider the cumulative effect of attorney error when the individual claims of ineffective assistance do not violate the defendant's constitutional rights"). As set forth above, the Court has concluded that Thomas's counsel were not constitutionally deficient with respect to any of Thomas's

11

numerous claims.² Therefore, a cumulative error analysis is inapplicable. Accordingly, this claim will be DENIED.

B. **Actual Innocence**

Finally, Thomas claims that he is "actually, factually innocent of the crimes he has been convicted of." Pet. at 2; *see also id.* at 7. In support of this claim, Thomas asserts that (i) he was stopped by police for having a firearm in a car that was not registered in his name; (ii) no permission was given to search the car; (iii) "no DNA, ballistic evidence, fingerprints[,] or forensic evidence was submitted to convict"; (iv) "no search warrants were submitted as evidence of legal search for probable cause"; and (v) "the evidence submitted about . . . firearm possession was insufficient to convict" because the "firearm was registered to the owner of the vehicle who had a registered permit for the firearm." Pet. at 7. For these reasons, Thomas claims that there was no probable cause for his stop, search, and arrest; that the criminal investigation against him and his convictions "are non-existent"; and that he is "actuall[y] factually innocent." *Id.*

To establish a claim of actual innocence, Thomas must demonstrate "factual innocence, not mere legal insufficiency" of his convictions. *Bousley v. United States*, 523 U.S. 614, 623–24 (1998) (citation omitted); *see United States v. Mikalajunas*, 186 F.3d 490, 494 (4th Cir.1992) (indicating that a petitioner must establish "actual factual innocence"). Claims based upon actual innocence "should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998). In fact, such claims "must be based on reliable evidence not presented at trial." *Id.* at 404–05 (citation and internal quotation marks omitted). The Court should consider this new evidence along

---

² The Court notes that Thomas makes a fleeting and seemingly incomplete reference to "the c[ha]nge in the law of 922(g)" "at the time of sentencing." Pet. at 6, ECF No. 144. Thomas was not convicted of an offense under 18 U.S.C. § 922(g), and it is not clear to the Court what argument, if any, Thomas is seeking to advance here. To the extent Thomas is claiming that counsel was ineffective for failing to address a change in law regarding § 922(g) offenses, such claim will be DENIED.

with "any other admissible evidence of the defendant's guilt," *id.*, to decide whether "'[no] rational trier of fact could [find] guilt beyond a reasonable doubt.'" *Hazel v. United States*, 303 F. Supp. 2d 753, 761 (E.D. Va. 2004) (quoting *Herrera v. Collins*, 506 U.S. 390, 401–02 (1993)).

Here, Thomas offers no new evidence, and his assertions are plainly nothing more than attacks on the legal sufficiency of his convictions, not claims of actual innocence.[3] Accordingly, this claim will be DENIED.

### IV. CONCLUSION

For the reasons set forth above, Thomas's claims will be DENIED in their entirety and his § 2255 Petition, ECF No. 144, will be DISMISSED. A certificate of appealability will be DENIED.[4]

An appropriate Final Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Dated: September 16, 2024
Richmond, Virginia

---

[3] To the extent that Thomas seeks to collaterally attack his convictions, any such claims are procedurally defaulted as Thomas did not raise them on appeal. "In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains," or he "must show actual innocence." *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999) (citations omitted). Thomas has not come close to establishing the cause and prejudice or actual innocence necessary to overcome his procedural default. Accordingly, any such claims will be DENIED.

[4] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Thomas has not satisfied this standard.